UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,               No. 03-CR-80406

vs.                                           Hon. Gerald E. Rosen

IMAD MOHAMAD-MUSBAH HAMMOUD,
et al.,

                Defendants.
_____/

OPINION AND ORDER DENYING DEFENDANTS'
MOTIONS TO DISMISS INDICTMENT

        At a session of said Court, held in
        the U.S. Courthouse, Detroit, Michigan
        on       May 16, 2008

        PRESENT: Honorable Gerald E. Rosen
                        United States District Judge

This 19-defendant RICO conspiracy action[1] involving an alleged multi-million dollar per year contraband cigarette trafficking organization is presently before the Court on two motions to dismiss filed by four defendants: Ali Berjaoui, Jihad (a/k/a "Jay") Hammoud, Majid Mohamad Hammoud and Fadi Mohamad-Musbah Hammoud. Defendants Mohamad Zeidan and Adel Isak have joined in the motions. The

---

[1] Five of the nineteen defendants -- Defendants Fadi Haydous, Imad Hamadeh, Youssef Bakri, Theodore Schenk and Karim Hassan Nassar -- have already pled guilty; Haydous, Hamadeh and Nassar have been sentenced. Seven of the named defendants are fugitives. Thus, at present, there are seven "active" defendants.

1

Government responded to Defendants' Motions. On October 11, 2007, the Court heard oral argument on these motions and took the matter under advisement. Defendants thereafter filed supplemental briefs to which the Government subsequently responded.

Having reviewed and considered the parties' briefs and the oral arguments of counsel, the Court is now prepared to rule on this matter. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

On April 14, 2004, the Grand Jury returned a First Superseding Indictment charging the 19 named defendants with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). Specifically, the indictment charged the defendants with being members of the "Hammoud Enterprise," which allegedly operated from Lebanon, Canada, Brazil, Paraguay, China, North Carolina, Florida and the Dearborn, Michigan area. The enterprise is alleged to have perpetrated crimes in ten states, including trafficking of contraband cigarettes, in violation of 18 U.S.C. § 2342; obtaining, producing and/or distributing millions of counterfeit goods (including counterfeit cigarette tax stamps, counterfeit Viagra, and counterfeit "Zigzag" cigarette papers) in violation of 18 U.S.C. §§ 2315, 2320; transporting stolen goods (including cartons of stolen paper products and baby formula) in interstate commerce in violation of 18 U.S.C. §§ 2314, 2315; and money laundering in violation of 18 U.S.C. § 1656. The indictment further charges that the defendants and

others involved in the conspiracy were bound together by their common Lebanese heritage, a common language (Arabic), allegiance to and support of Hizballah, blood relations, and a common purpose of generating large sums of money illegally.[2]

The Hammoud enterprise allegedly comprised a multi-million dollar-a-year contraband cigarette trafficking organization, headquartered in the Dearborn, Michigan area between 1996 and 2002. Members of the enterprise allegedly purchased cigarettes in low tax or no-tax jurisdictions, including North Carolina and on the Cattaraugus Indian Reservation near Irving, New York, in quantities worth up to $500,000 per week, then transported them to Michigan and New York where they were re-distributed. After Michigan enacted its cigarette tax stamp requirement in 1998,[3] members of the enterprise allegedly also began to obtain, produce and/or distribute millions of counterfeit state cigarette tax stamps for the states of Michigan, California and New York. In addition, members and associates of the enterprise are alleged to have obtained and distributed a counterfeit version of the prescription drug, Viagra, as well as other counterfeit or stolen products.

Throughout the operation of this enterprise, five of the named defendants -- Hasan

---

[2] A separate second count in the indictment also charges Defendant Ali Al-Mosawi, one of the fugitive defendants, with smuggling and attempted smuggling of 40 tons of polyethylene resin with a forged and fraudulent certificate of origin, in violation of 18 U.S.C. § 545. This separate count was not addressed in Defendants' motions nor is it addressed in this Opinion.

[3] These tax stamps evidence the payment of applicable state cigarette taxes in the state where the cigarettes are found.

Al-Mosawi, Imad Hammoud, Hassan Nasser, Karim Nasser, and Ali Hammoud -- are accused of being avid supporters of Hizballah. Portions of the profits from the illegal activities of the Hammoud Enterprise, as well as money directly solicited from others (e.g., charging a "Resistance Tax" over black market price per carton on contraband cigarettes), were allegedly given to Hizballah. Further, according to the indictment, persons disagreeing with support of Hizballah were expelled from the enterprise.

Four Defendants, Ali Najib Berjaoui, Jihad "Jay" Hammoud, Majid Mohamad Hammoud, and Fadi Mohamad-Musbah Hammoud have moved to dismiss the indictment claiming that the RICO conspiracy charge in Count I[4] fails to allege essential elements of the offense. Specifically, Defendants complain that no facts are set forth in the indictment which indicate an "enterprise" separate and apart from the predicate "racketeering acts."

### III. DISCUSSION

In order to prove a RICO violation under 18 U.S.C. § 1962(c), the Government must establish: (1) the existence of an enterprise which affects interstate or foreign commerce; (2) that the defendant "associated with" the enterprise; (3) that the defendant participated in the conduct of the enterprise's affairs; and (4) that the participation was through a pattern of racketeering activity. *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983). The defendant's participation in the enterprise may take place through

---

[4] These Defendants are only charged in Count I of the First Superseding Indictment.

the offense of various crimes unrelated to one another as long as these crimes are in some way intended to further the enterprise's affairs. *Id.* [5]

In addition to the aforementioned elements, in order to prove a "RICO conspiracy" under 18 U.S.C. § 1962(d), the government must establish, the existence of an illicit agreement to violate the substantive RICO provision. *Id.* An agreement can be shown if "the defendant. . . objectively manifested an agreement to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes." *Id.* at 1261.

As indicated, Defendants' argument in this case is that the indictment here is deficient because it fails to allege facts which indicate an "enterprise" separate and apart from the predicate "racketeering acts." In support of their argument, however, Defendants rely upon an interpretation of the RICO statute and *United States v. Turkette*,

---

[5] An "enterprise" is defined in the statute as including "any individual partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This definition has been interpreted to mean both legitimate and illegitimate enterprises. *United States v. Turkette*, 452 U.S. 576, 587, 101 S.Ct. 2524, 2530 (1981).

"Racketeering activity" means any activity indictable under the provisions of Title 18 and a "pattern" of racketeering activity requires at least two acts of the activities prohibited under Title 18. *United States v. Sinuto, supra.* The Indictment alleges: (1) violations of 18 U.S.C. § 2342 (contraband cigarette trafficking); (2) violations of 18 U.S.C. § 2315 (possession of counterfeit tax stamps); (3) violations of 18 U.S.C. § 2320 (trafficking in counterfeit goods); (4) violations of 18 U.S.C. §§ 2314, 2315 (possession and interstate transportation of stolen property); and (5) violations of 18 U.S.C. § 1956 (money laundering).

5

452 U.S. 576 (1981), which has been <u>squarely *rejected*</u> by the Sixth Circuit. Specifically, in support of their argument, the lead cases Defendants rely upon are *United States v. Bledsoe*, 674 F.2d 647, 664 (8th Cir. 1982) and *United States v. Riccobene*, 709 F.2d 214, 222 (3rd Cir. 1983). In those cases, the courts held that to establish an enterprise the government must demonstrate an "ascertainable structure" *separate and distinct* from that inherent in the conduct of a pattern of racketeering activity. The Sixth Circuit, however, has rejected the *Bledsoe-Riccobene* line of cases and has construed *Turkette* more broadly:

> The *Turkette* Court alluded to the fact that proof of a pattern of racketeering activity could also be used to show the existence of an enterprise. *Turkette*, 452 U.S. at 583, 101 S.Ct. 2524 ("While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other.") This court has adopted such a reading of *Turkette*:
>
>> We agree that *Turkette* requires the government to prove both the existence of an "enterprise" and a "pattern of racketeering activity." **We do not however, read *Turkette* to hold that proof of these separate elements be distinct and independent, as long as the proof offered is sufficient to satisfy both elements.**

*United States v. Johnson*, 440 F.3d 832, 840 (6th Cir. 2006), quoting *United States v. Qaoud*, 777 F.2d 1105, 1115 (6th Cir. 1985), *cert. denied*, 475 U.S. 1098 (1986) (emphasis added).

Thus the law in this Circuit is that "[a]lthough 'enterprise' and 'pattern of racketeering activity' are separate elements, they may be proved by the same evidence."

6

*United States v. Qaoud, supra*; *United States v. Johnson, supra* ("The enterprise element is also demonstrated by the evidence of crimes its members were alleged to have committed.") *See also Hofstetter v. Fletcher*, 905 F.2d 897, 903 (6th Cir. 1988); *United States v. Hudson*, 52 F.3d 326, 1995 WL 234680 at \*\*2 (6th Cir. 1995) (unpublished);*United States v. Sims-Robertson*, 16 F.3d 1223, 1994 WL 12212 at \*4 (6th Cir. 1994) (unpublished); *United States v. Collins*, 927 F.2d 605, 1991 WL 23558 at \*\*15 (6th Cir. 1991) (unpublished), *cert. denied*, 502 U.S. 858 (1991) ("The Sixth Circuit . . . has specifically rejected the position that there must be proof of an enterprise distinct from proof of a pattern of racketeering.")[6]

---

[6] The Court is mindful of the group of Sixth Circuit cases cited by Defendants in their supplemental brief which contain language that appears to contradict *Qaoud*. However, none of those cases were *en banc* decisions, and as such, cannot and do not overrule *Qaoud*. *See* Sixth Circuit Rule 206(c) ("Reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court en banc consideration is required to overrule a published opinion.")

Moreover, the line of decisions cited by Defendants all stem from *dicta* in *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993). In that case, the appellate court affirmed the dismissal of a civil RICO complaint based upon lack of standing by the plaintiff, a lack of predicate acts, a complete absence of a pattern of racketeering, and the complete absence of an enterprise. Citing only *Turkette*, the panel loosely used language in *dicta* stating, "To satisfy the enterprise requirement, an association-in-fact must be an ongoing organization, its members must function as a continuing unit, and it must be separate from the pattern of racketeering activity in which it engages." While this "must be separate from the pattern of racketeering activity" language appears to contradict *Qaoud*, the *Frank* court never even acknowledged *Qaoud* or that there was a split in the circuits on whether the enterprise must be distinct from the pattern of racketeering activity. The two other cases cited by Defendants, *VanDenBroeck v. Commonpoint Mortgage Co.*, 210 F.3d 696 (6th Cir. 2001) and *United States v. Chance*, 306 F.3d 356 (6th Cir. 2002), subsequently cited this same *dicta* from *Frank*, again without any analysis or even reference to the established law of the circuit. In any event, it was subsequent to the

In fact, the majority of circuits have refused to follow *Bledsoe/Riccobene* and have rejected the position that there must be proof of an enterprise separate and distinct from proof of a pattern of racketeering. *See, e.g.*, *United States v. Cagnina*, 697 F.2d 915, 920-21 (11th Cir.), *cert. denied*, 464 U.S. 856 (1983); *United States v. Mazzei*, 700 F.2d 85, 89 (2nd Cir.), *cert. denied*, 461 U.S. 945 (1983); *United States v. Patrick*, 248 F.3d 11, 18-19 (1st Cir. 2001) ("This court was before asked to adopt the *Bledsoe* ["ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering activity"] test; it did not need to resolve the question because the evidence was sufficient even assuming *arguendo* the *Bledsoe* test applied. . . . We today explicitly reject the *Bledsoe* test." (Citations omitted.)); *see also, Odom v. Microsoft, Inc.*, 486 F.3d 541, 549-50 (9th Cir. 2007) ("We take this opportunity to join the circuits that hold that an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." *Id.* at 550.); *United States v. Perholtz*, 842 F.2d 343, 364 (D.C. Cir.), *cert. denied*, 488 U.S. 821 (1988); *United States v. Diecidue*, 603 F.2d 535, 545 (5th Cir.1979), *cert. denied,* 445 U.S. 946 (1980).

Furthermore, even if the *Bledsoe* line of cases were the law of this Circuit, as the court observed in *McNeil v. Salan*, 961 F.2d 1578, 1992 WL 102734 (6th Cir. 1992) (unpublished), none of those cases speaks to what must be *pleaded* in order to state a cause of action, and, therefore, will not support a motion to dismiss:

---

cases cited by Defendant that the Sixth Circuit decided *Johnson, supra* and reaffirmed its holding in *Qaoud*. *See United States v. Johnson*, 440 F.3d at 840.

8

> Those cases discuss the requirement that the *proof* must show the existence of a RICO enterprise separate and apart from the predicate acts which constitute the pattern of racketeering activity. They do not discuss the requirements for *pleading* the nature or separateness of the enterprise.

1992 WL 102734 at * 2 (emphasis in original).

Indeed, even the Third Circuit which adopted the *Bledsoe* "separate proof" rule in *Riccobene*, *supra*, made a point to distinguish the "proof" requirements from the "pleading" requirements in *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3rd Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985). In *Seville*, the Third Circuit reversed a case in which the district court had dismissed a plaintiff's RICO complaint because it did not sufficiently allege the separateness of the enterprise. In so doing, the appellate court stated:

> In *Riccobene* this court stated that in order to establish the existence of an enterprise, the government must demonstrate (1) that the enterprise is an ongoing organization with some sort of framework or superstructure for making or carrying out decisions; (2) that the members of the enterprise function as a continuing unit with established duties; and finally (3) the enterprise must be separate and apart from the pattern of activity in which it engages. 709 F.2d at 221-24. The court below ruled that because Seville failed to plead these three attributes, Count One did not state a cause of action under RICO and must be dismissed.
>
> In so ruling, the district court confused what must be ***pleaded*** with what must be ***proved***. *Riccobene* and *Turkette* certainly stand for the proposition that a plaintiff, to recover, must prove that an alleged enterprise possesses the three described attributes. *But neither case speaks to what must be **pleaded** in order to state a cause of action.* The district court erred in applying the *Riccobene-Turkette* proof analysis to the allegations in Seville's complaint.
>
> . . . Under the modern federal rules, ***it is enough that a complaint put the defendant on notice of the claims against him. It is the function*** . .

*. of trial to establish fully each element of the cause of action.*

*Id.* at 789-90 (some emphasis added.)

Like a civil complaint's "notice pleading" requirement, a criminal indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also* Fed. R. Crim. P. 7(c) (an indictment must contain "a plain, concise and definite written statement of the essential facts constituting the offense charged.") The indictment in this case more than sufficiently informs Defendants of the charges against which they must defend.

Defendant Berjaoui also contends -- incorrectly -- that the Government must allege and prove that he participated in the operation or management of the enterprise. Apparently, Berjaoui misapprehends the distinction between a substantive RICO violation and participation in a RICO conspiracy. "A RICO conspiracy does not demand total fusion or that all defendants participate in all racketeering acts, know of the entire conspiratorial sweep, or be acquainted with all other defendants, but the component parts must be linked together in such a way to afford a plausible basis for the inference that an agreement existed." *United States v. Boylan*, 898 F.2d 230 (1st Cir. 1990), *cert. denied* 498 U.S. 849 (1990). In short, all that the Government must show to demonstrate a RICO conspiracy is that "a conspiracy existed and [that] the defendant was a member of that conspiracy." *United States v. Hughes*, 895 F.2d 1135, 1141 (6th Cir. 1990). A particular person's membership in the conspiracy may be inferred from that person's actions. *Id.*

Further, and specifically contrary to Defendant Berjaoui's assertions, to establish a Section 1962(d) conspiracy offense, the defendant need not be an operator or manager of the enterprise, only that he knew of "the general nature of the enterprise and that the enterprise extend[ed] beyond his control." *United States v. Tocco*, 200 F.3d 401, 425 (6th Cir. 2000). *See also Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000) (a RICO conspirator need only "knowingly agree to perform services of a kind which facilitate the activities of those who are operating the enterprise.") In sum, all that the Government need allege is that Berjaoui's actions were in some way linked to the enterprise, which it did by alleging that Berjaoui knowingly distributed cigarettes that were supplied through the "Hammoud Enterprise."

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant Berjaoui's Motion to Dismiss **[Dkt. No. 136]** and Defendants Jihad Hammoud, Majid Hammoud and Fadi Hammoud's Motion to Dismiss **[Dkt No. 169]**, as joined in by each other and by Defendants Zeidan and Isak **[Dkt. Nos. 173, 176, 183, 184, and 189]**, are hereby DENIED.

SO ORDERED.

        s/Gerald E. Rosen
        United States District Judge

Dated: May 16, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 16, 2008, by electronic and/or ordinary mail.

        s/LaShawn R. Saulsberry
        Case Manager